## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK
_____

RIKI LYN OSTROM,

                                      Plaintiff,

    v.                                                             7:14-CV-00268
                                                                                (MAD/ATB)

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,

                                      Defendant.
_____

PETER L. WALTON, ESQ., for Plaintiff
SERGEI ADEN, SPECIAL ASS'T U.S. ATTORNEY, for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT-RECOMMENDATION

This matter was referred to me for report and recommendation by the Honorable Mae A. D'Agostino, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). This case has proceeded in accordance with General Order 18.

## I.    PROCEDURAL HISTORY

On June 2, 2011, plaintiff filed an application for Social Security Disability Insurance Benefits ("DIB"), and she applied for Supplemental Security Income ("SSI") benefits on June 21, 2011. (Administrative Transcript ("T.") 20, 130-138). Plaintiff alleged disability, beginning February 1, 2009, involving, *inter alia*, degenerative disc disease, back problems, and depression. (T. 162, 170).

Plaintiff's applications were initially denied on September 16, 2011. (T. 79-84). After a hearing on October 22, 2012, at which plaintiff testified (T. 39-62), Administrative Law Judge ("ALJ") Marie Greener denied the applications in a

decision issued on November 13, 2012 (T. 17-38).  The ALJ's determination became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on January 30, 2014.  (T. 1-6).

## II. <u>GENERALLY APPLICABLE LAW</u>

### A. **Disability Standard**

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920 to evaluate disability insurance and SSI disability claims.

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the Commissioner next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in

2

> Appendix 1 of the regulations. If the claimant has such an impairment,
> the Commissioner will consider him [per se] disabled . . . . Assuming the
> claimant does not have a listed impairment, the fourth inquiry is whether,
> despite the claimant's severe impairment, he has the residual functional
> capacity to perform his past work. Finally, if the claimant is unable to
> perform his past work, the Commissioner then determines whether there is
> other work which the claimant could perform.

*Selian v. Astrue*, 708 F.3d 409, 417-18 (2d Cir. 2013); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do." *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009); *Selian*, 708 F.3d at 418 & n.2.

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian*, 708 F.3d at 417; *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from

3

both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id. See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

### III.  FACTS

As of the date of the administrative hearing in October 2012, plaintiff was 28 years old. (T. 44). Plaintiff graduated high school, and completed one year of college. (T. 44). She resided with her two children–aged seven and three. (T. 44). Plaintiff acknowledged that she could generally care for herself–sometimes with considerable difficulty–and that she provided care for her children with assistance from her mother and a neighbor. (T. 50-54). Plaintiff testified that she did limited housekeeping and meal preparation, occasionally drove short distances, and went shopping for household goods. (T.52, 54). Plaintiff reported a limited employment history that was interrupted due to pregnancy and her health problems. (T. 54-55). Plaintiff's

4

employment included work as a health aide, cashier, front desk clerk, and call center representative. (T. 45-46, 55).

Plaintiff was first diagnosed with degenerative disc disease in 2006. (T. 190, 228). Late in 2006, Plaintiff was referred to Dr. Lawrence Littell, who has been treating plaintiff on a regular basis since that time. (T. 222-224). In January 2008, Plaintiff underwent a left L4-5 nerve root decompression surgery, performed by Dr. Ross Moquin of Neurosurgical Associates of Central New York (T. 230-235, 326-330). Following the surgery, Plaintiff's medical records show continued follow-up care for back pain with Dr. Littell from 2009 to 2011. (T. 260-261, 332-334, 398-425).

Plaintiff has also received treatment for depression and manic episodes since 2009. (T. 262, 285, 299, 325). At the hearing, Plaintiff testified that she has been treated for bipolar disorder and anxiety, including hospitalization, and is currently taking medication for depression and anxiety. (T. 50, 58). Plaintiff's medical records indicate that over the course of her treatment, her Global Assessment of Functioning [1] ("GAF") score has ranged between 25 and 61. (T. 240, 242, 250, 252, 254, 314).

The ALJ's decision provides a detailed statement of the medical and other evidence of record. (T. 16-17, 19-29). Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

---

[1] The GAF Scale (DSM—IV Axis V) ranks psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness to assist "in tracking the clinical progress of individuals [with psychological problems] in global terms." *Kohler v. Astrue,* 546 F.3d 260, 262 n. 1 (2d Cir.2008) (quoting Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders ("DSM–IV"),* at 32 (4th ed.2000)).

## IV. ALJ's DECISION

As an initial matter, the ALJ determined that plaintiff met the insured status requirements for DIB benefits through March 31, 2014. (T. 22). At step one of the sequential analysis, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset of disability on February 1, 2009. (T. 22). Next, the ALJ determined that plaintiff's "degenerative disc disease of the lumbar spine, anxiety disorder, and depressive disorder" were "severe" impairments. (T. 22). At the third step, the ALJ determined that plaintiff's impairments did not meet or medically equal the criteria of the listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P., including the listings for disorders of the spine and mental impairments. (T. 23-25).

The ALJ next assessed plaintiff's residual functional capacity ("RFC"). She concluded that plaintiff retained the RFC to perform "light work" as defined at 20 C.F.R. § 404.1567(b), so long as such work was limited to low stress work, "meaning work involving routine daily tasks and duties that do not significantly change in pace or location on a daily basis, and that do not require confrontation such as arguing with customers, negotiating, restraining, or detaining others." (T. 25-32). While the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, the ALJ decided that the plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms were not credible, to the extent they were inconsistent with the ALJ's RFC determination. (T. 26-30).

At step four, the ALJ found that the plaintiff was able to meet the exertional demands of light work, but there was no vocational evidence regarding the impact of

6

plaintiff's non-exertional limitations. The ALJ thus concluded that plaintiff could not perform her past relevant work, which included work as a cashier in a grocery store and as a direct care staff member for the disabled, which involved light to medium exertional demands. (T. 33). The ALJ proceeded to step five and determined that a finding of "not disabled" was appropriate under the framework of Medical-Vocational Rule 202.21 and Social Security Rulings 85-15 and 83-14 because plaintiff's additional impairments had little effect on the occupational base of unskilled light work. (T. 34). The ALJ did not seek the advice of a vocational expert in determining that jobs existed in significant numbers in the national economy that plaintiff could perform. (T. 33).

V.     **ISSUES IN CONTENTION**

Plaintiff argues that the ALJ erred in his RFC assessment, by not giving adequate weight to the opinions of plaintiff's treating physician, Dr. Lawrence Littell, and by improperly weighing the other medical evidence. (Pl.'s Brf. at 13-20, Dkt. No. 9).

For the reasons stated below, this court concludes that the ALJ erred in evaluating the medical evidence and finds that her RFC determination, particularly with respect to plaintiff's capacity for lifting/carrying, prolonged standing/walking and sitting, was not supported by substantial evidence. As a result, the ALJ's evaluation of plaintiff's credibility and the ultimate finding that plaintiff was not disabled, were tainted. Accordingly, the court recommends a remand for further administrative proceedings to properly assess the medical evidence and plaintiff's credibility in connection with the Commissioner's RFC determination.

7

## VI.  RFC/TREATING PHYSICIAN

### A.  Legal Standards

#### 1.  RFC

Residual functional capacity ("RFC") is "what [the] individual can still do despite his or her limitations.  Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ."  A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule.  *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999).  An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities.  *Id.* (citing, *inter alia*, *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984)).  RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations.  *Id.* (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)).  The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence.  *Trail v. Astrue*, 5:09-CV-1120 (DNH/GHL), 2010 WL 3825629, at *6 (N.D.N.Y. Aug. 17, 2010) (citing SSR 96-8p, 1996 WL 374184, at *7).

As noted above, the ALJ determined that plaintiff had the RFC to perform "light work," so long as the plaintiff was limited to low stress work. Under 20 C.F.R. § 404.1567(b), light work is defined as follows:

> [L]ifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

Social Security Ruling 83-10 elaborates on the requirements of light work:

> Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time. . . . Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk.

SSR 83-10, 1983 WL 31251, at *5-6. *See also Poupore*, 566 F.3d at 305 (2d Cir. 2009) ("The full range of light work requires intermittently standing or walking for a total of approximately 6 hours of an 8-hour workday, with sitting occurring intermittently during the remaining time.").

### 2. Treating Physician

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ." *Halloran v.*

9

*Barnhart*, 362 F.3d 28, 32 (2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ must properly analyze the reasons that a report of a treating physician is rejected. *Halloran,* 362 F.3d at 32-33. An ALJ may not arbitrarily substitute his own judgment for competent medical opinion. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

### B. Analysis

As noted above, the ALJ found that plaintiff could perform nearly the full range of light work, and, in particular, could lift and/or carry 20 pounds occasionally and ten pounds frequently, stand or walk for approximately six hours in an eight-hour workday, and could sit for approximately six hours in a workday. (T. 25, 33-34). In reaching this RFC determination, the ALJ discounted or rejected the only medical opinion evidence regarding plaintiff's capacity for lifting/carrying and prolonged standing, walking, and sitting, as well as plaintiff's statements about her ability to stand, walk, and sit for sustained periods. (T. 30). The ALJ referenced the "clinical findings" and the "diagnostic images" as the basis for her findings that the plaintiff retained the ability to meet the exertional demands of light work. (T. 30). This court concludes that the ALJ has improperly substituted her own judgment for competent medical evidence, and that her RFC determination regarding plaintiff's ability to lift/carry, stand, walk and/or sit for prolonged periods is not supported by substantial evidence. The ALJ's erroneous evaluation of the medical evidence also tainted her evaluation of plantiff's credibility and her ultimate determination that plaintiff was not disabled.

Specifically, the ALJ concluded that the opinions of plaintiff's treating

physician, Dr. Littell, "regarding the claimant's functional limitations are given little weight in determining the claimant's residual functional capacity because, while his opinions suggest that the claimant's functional limitations have worsened, the diagnostic images clearly show that her back condition has improved." (T. 30). Dr. Littell completed a Medical Source Statement of Ability To Do Work-Related Activities (Physical) on November 9, 2011 and September 19, 2012. (T. 378-381, 451-457). In each report, Dr. Littell opined that plaintiff is limited to lifting less than 10 pounds frequently and no more than 10 pounds occasionally, and can stand or walk for less than 2 hours in an 8 hour workday due to back spasms and pain which is worsened by activity. (T. 378, 451). Dr. Littell also opined that plaintiff can sit for less than 6 hours in an 8 hour workday. (T. 379, 452).

The Regulations require an ALJ to give "controlling weight" to the opinion of a treating physician on the issue of the nature and severity of a claimant's impairment if that opinion "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(d)(2); see also *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). The Treating Physician Rule recognizes that a claimant's treating sources, who in most cases are medical professionals, are more apt to "provide a detailed, longitudinal picture of [the patient's] medical impairment(s) and may bring a unique perspective to the medical findings" as opposed to an evaluation of a one-time non-examining, non-treating physician. 20 C.F.R. § 404.1527(d)(2); see *Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993).

The ALJ's decision discusses, in some detail, the results of plaintiff's prior x-

rays, MRIs, and medical exams (T. 26-27), which on January 7, 2010 showed "mild" disc space narrowing, mild facet hypertrophy, and midline annular tear[2] at the L4-L5 level with a small left foraminal marginal osteophyte (T. 26-27, 260). There was also a small central disc protrusion and disc desiccation at the L5-S1 level, but the disc height was preserved (T. 27, 260). X-rays and MRIs performed on April 20, 2011 showed "mild to moderate" disc space narrowing at the L4-L5 Level (T. 27, 294-95) and a "tiny" protrusion and annular tear at the L3-L4 level with no canal stenosis[3] or significant foraminal narrowing[4] (27, 336). The June 15, 2011 MRI showed no disc herniation at the L4-L5 level, only mild to moderate left foraminal narrowing, and no significant foraminal narrowing on the right side (T. 27, 336). There was a central disc herniation at the L5-S1 level causing minimal deformity of the ventral sac, no significant nerve root displacement, no canal stenosis, and no significant foraminal narrowing. (T. 27, 336).

An MRI of the claimant's lumbar spine performed on August 28, 2012, showed

---

[2] An intervertebral disc . . . has a strong outer ring of fibers, called the annulus fibrosus . . . . If it tears and no disc material is ruptured, this is called an annular tear. The outer 1/3 of the disc's annular ring is highly innervated with pain fibers. Thus, if a tear involves the outer 1/3 it may be extremely painful. This tear will heal with scar tissue over time but is more prone to future tears and injury. Studies also indicate that annular tears may lead to premature degeneration of the disc, endplates, and facet joints."
http://www.spinemd.com/symptoms-conditions/annular-tear

[3] "In lumbar stenosis, the spinal nerve roots in the lower back are compressed, or choked, and this can produce symptoms of sciatica–tingling, weakness or numbness that radiates from the low back and into the buttocks and legs–especially with activity."
http://www.spine-health.com/conditions/spinal-stenosis/what-spinal-stenosis

[4] "Spinal nerves pass through an opening in the spinal column known as the foramen. The process of disc degeneration or bulging causes the foramen to become narrower."
http://www.spinaldisorders.com/neural-foraminal-narrowing.htm

no significant change at the L3-L4 level, a broad based annular bulge and degenerative facet joint changes at the L4-L5 level causing mild left neural foraminal narrowing, no frank right neural foraminal narrowing or frank central canal stenosis. (T. 27, 450). At the L5-Sl level, the August 2012 MRI showed a mild broad based annular bulge and "tiny" disc protrusion which was smaller compared to prior MRIs. (T. 450).

In discounting Dr. Littell's RFC findings, the ALJ cites a 2010 physical examination of plaintiff by Margaret Fisher, Nurse Practitioner ("NP") at Crouse Hospital in Syracuse[5], who documented that plaintiff had full range of motion of her lumbar spine and extremities, no sensory deficits in upper or lower extremities, retained full motor strength in all muscle groups, was able to walk on her toes and heels, and walked with a normal gait. (T. 27, 332-33). This same examination found back pain with full flexion and palpable tenderness along the low spinous processes in the lumbar spine. As a result, plaintiff was prescribed pain medication and physical therapy. (T. 332-33). The report does not address plaintiff's ability to lift/carry, or sit and stand for extended periods.

The ALJ also stated that she gave "some weight" to the August 6, 2011 report and medical source statement by consulting medical examiner Dr. George Sirotenko, DO, who performed an orthopedic examination of plaintiff. (T. 30, 342-44). Dr. Sirotenko found that plaintiff had persistent back pain, and recommended that she

---

[5] A nurse practitioner is not an "acceptable medical source" whose opinions are entitled to controlling weight. However, a nurse practitioner is qualified to present evidence with respect to the severity of a claimant's impairments and the effect of those impairments on a claimant's ability to work. SSR 06-3p, 2006 WL 2329939, at *2.

avoid maintaining one position for an extended period of time, repetitive forward flexion, extension and rotation, and pushing, pulling and lifting objects "greater than moderate weight" overhead on a repetitive basis to prevent axial load. (T. 344). The ALJ found that Dr. Sirotenko's opinion was supported by his findings, which included that plaintiff had full range of motion of her cervical spine, shoulders, elbows, forearms and wrists, no joint inflammation, effusion or instability, no muscle atrophy or sensory deficits in her upper extremities, lumber spine forward flexion 40 degrees, extension 20 degrees, and lateral rotation 20 degrees. (T. 30-31, 343-44). Dr. Sirotenko did not address plaintiff's ability to lift or carry or to stand or sit for any period of time, beyond noting that plaintiff should avoid maintaining one position for extended periods.

The ALJ concluded, based on her review, that plaintiff's back condition had improved, not worsened, over time, and that the clinical findings suggest that plaintiff's back impairment did not cause her physical limitations such that she would not be able to perform light work. (T. 27, 30).

In reaching her conclusions with respect to plaintiff's ability to stand, walk, and/or sit over an eight-hour workday, the ALJ marshaled no medical evidence to support such a conclusion but, instead, improperly substituted her own judgment for the only competent medical opinions of record. *See Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (an ALJ may choose among properly submitted medical opinions, but may not set his own expertise against that of physicians who submitted opinions to him) (citing *Balsamo v. Chater*, 142 F.3d 75, 80-81 (2d Cir. 1998) (in the absence of a supporting medical opinion, the ALJ cannot arbitrarily substitute his own

14

judgment for competent medical opinion)).[6] As noted, the ALJ rejected the opinion of plaintiff's treating doctor that plaintiff was limited to occasionally lifting or carrying ten pounds, and could stand/walk for less than two hours and sit for less than 6 hours during an eight-hour workday – the only medical opinion to specifically address these issues. (T. 451-52). The ALJ's conclusion also appears to reject the finding of the consulting examiner that plaintiff should avoid maintaining one position for extended periods. *See, e.g., Tricic v. Astrue,* No. 6:07-CV-997 (NAM), 2010 WL 3338697, at *3-4 (N.D.N.Y. Aug. 24, 2010) (the ALJ's determination that plaintiff could stand/walk and sit for about six hours in an eight-hour workday was not supported by substantial evidence where two treating doctors opined that plaintiff should avoid prolonged sitting and/or standing, and no examining doctor provided a specific opinion about plaintiff's ability to sit or stand for particular periods of time); *DiVetro v. Commissioner of Social Sec.*, No. 5:05-CV-830 (GLS/DEP), 2008 WL 3930032, at *12-13 (N.D.N.Y. Aug. 21, 2008) (the record lacks any assessment from either a treating source or a consultant supporting a finding of plaintiff could sit for eight hours in a given workday; this portion of the ALJ's RFC determination was not well-supported); *Maginnis v. Astrue*, No. 5:11-CV-36, 2012 WL 2046883, at *6-7 (D. Vt. Mar. 14, 2012) (the ALJ erred because his RFC determination as to plaintiff's ability to lift and carry and to stand and/or walk during an eight-hour day, was not supported

---

[6] *See also Royal v. Astrue*, No. 5:11-CV-456 (GTS/ESH), 2012 WL 5449610, at *6 (N.D.N.Y. Oct. 2, 2012) (while ALJs are entitled to resolve conflicts in the record, they cannot pick and choose only evidence from the same sources that supports a particular conclusion) (citing, *inter alia*, *Fiorello v. Heckler*, 725 F.2d 174, 175-76 (2d Cir. 1983)) (Rep't-Rec.), *adopted*, 2012 WL 5438945 (N.D.N.Y. Nov. 7, 2012).

by the opinions of either treating doctor, to which the ALJ purportedly gave significant weight) (Rep't-Rec.), *adopted*, 2012 WL 2019701, at *1 (D. Vt. June 5, 2012) (the Magistrate Judge properly concluded that the RFC determination was not supported by substantial evidence because the ALJ gave more weight to the opinions of non-examining and non-treating sources over physicians who had fairly extensive treating relationships with the plaintiff).

The ALJ did not cite any medical opinion evidence, and this court found none in the record, that would suggest that plaintiff was capable of the prolonged sitting, standing, and/or walking during an eight-hour workday, as the ALJ concluded. *See, e.g., Burton v. Colvin*, 2014 WL 2452952, at *10 (no acceptable or other medical source opined that she was able to stand or walk most of the workday; the ALJ erred by not explaining the basis for his conclusion); *Andrews v. Astrue*, 7:10-CV-1202 (RFT), 2012 WL 3613078, at *9 (N.D.N.Y. Aug. 21, 2012) (there is no support in the medical record for the ALJ's RFC assessment that plaintiff can engage in light work; the ALJ failed to point to what evidence supports his findings, but instead, simply discounts the other medical opinions).[7]

In contrast, the ALJ's RFC findings related to plaintiff's mental residual functional capacity specifically rely upon the opinions of Dr. Littell, consultative

---

[7] The record did include a Physical RFC Assessment that opined that plaintiff could stand/walk and/or sit six hours in an eight-hour workday, completed by an S. Woodmansee (T. 351). The ALJ did not cite this assessment, presumably because it was unclear from the assessment whether it had been prepared by a doctor or a "Single Decision Maker." (T. 355). The conclusions of a Single Decision Maker are not entitled to any weight. *Andrews*, 2012 WL 3613078, at *9 (the ALJ correctly did not accord any weight to a disability analyst's RFC opinion because she is not a physician). Interestingly, in this case, as in *Andrews*, the ALJ's RFC determination appeared to reflect the findings of the disability analyst, but had no support in the competent medical evidence).

16

examiner Dr. Christine Ransom, and state psychological consultant Dr. T. Harding, in addition to the clinical findings. Substantial evidence supported the ALJ's determination that plaintiff's anxiety disorder and depressive disorder resulted in mild to moderate limitations on plaintiff's ability to work, but that plaintiff retained the ability to perform low stress work that involved routine daily tasks and duties which do no significantly change on a daily basis, and that do not require confrontation, such as arguing with customers. (T. 31-34).

The ALJ's observations about plaintiff's activities of daily living[8], on their own, do not support her RFC finding as to plaintiff's ability to meet the standing, walking, and sitting requirements for light work. (T. 16-17, 29). None of the daily activities that plaintiff acknowledged demonstrate her capacity for prolonged standing, walking, or sitting. (T. 50-54). In any event, "it is well-settled that the performance of basic daily activities does not necessarily contradict allegations of disability, as people should not be penalized for enduring the pain of their disability in order to care for themselves." *Stoesser v. Comm'r of Soc. Sec.*, No. 08-CV-643 (GLS/VEB), 2011 WL 381949, at *6-7 (N.D.N.Y. Jan. 19, 2011) (claimant's daily activities–including cleaning the house, watching television and playing video games, cooking simple meals, and shopping for groceries–did not support the ALJ's finding that plaintiff could perform sedentary work over an eight-hour workday in light of plaintiff's testimony that he could not sit for more than 30 minutes to an hour without standing

---

[8] The ALJ appropriately noted inconsistencies in plaintiff's hearing testimony and statements to consultative examiners and medical providers regarding her daily activities, and concluded that these inconsistencies undermined her credibility.

up) (Rep't-Rec.), *adopted*, 2011 WL 381941 (N.D.N.Y. Feb. 3, 2011); *See also, Woodford v. Apfel*, 93 F. Supp. 2d 521, 529 (S.D.N.Y. 2000) (the ALJ erred when he concluded that plaintiff could meet the sitting requirements of sedentary work because she cooked and shopped for herself, used public transportation, and managed to remain seated for one long plane ride).

In sum, this court concludes that the ALJ's RFC determination, particularly the finding that plaintiff is able "to lift and/or carry 20 pounds occasionally, ten pounds frequently, sit for six hours in an eight-hour day, and stand and/or walk for six hours in an eight-hour day" is not supported by substantial evidence. (T. 25). On remand, the Commissioner should properly address the totality of the medical opinion and other evidence, assess and articulate plaintiff's RFC with sufficient specificity, and present the evidence upon which the Commissioner relies to support the RFC determination. Plaintiff's credibility should be re-assessed based upon an appropriate evaluation of the medical evidence. If, on remand, the ALJ determines that plaintiff's impairments significantly limit the full range of work plaintiff can perform at the light or sedentary work levels, the ALJ may be required to consult a vocational expert ("VE"). *Bapp v. Bowen*, 802 F.2d 601, 605-06 (2d Cir. 1986).

## VII.  **NATURE OF REMAND**

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard . . . remand to the Secretary for further development of the evidence" is generally appropriate. *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980). The plaintiff does not contend, and this court cannot conclude that "substantial evidence on the record as a whole indicates that the [plaintiff] is disabled[,]" and thus,

18

I cannot recommend a remand solely for the determination of benefits. *See Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996).

**WHEREFORE,** based on the findings in the above Report, it is hereby

**RECOMMENDED**, that the decision of the Commissioner be **REVERSED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for a proper evaluation of the medical and other evidence, an appropriate determination of plaintiff's residual functional capacity, and other further proceedings, consistent with this Report.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: March 6, 2015

_____
Hon. Andrew T. Baxter
U.S. Magistrate Judge